J-S83042-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN RE: ADOPTION OF J.R.K. : IN THE SUPERIOR COURT OF
 :   PENNSYLVANIA
 :
 :
 :
 :
 :
 :
 :
APPEAL OF: J.K., FATHER : No. 989 WDA 2016

Appeal from the Order entered June 6, 2016
in the Court of Common Pleas of Westmoreland County
Orphans' Court at No(s):  92 of 2015

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, and STRASSBURGER*, JJ.

MEMORANDUM BY STRASSBURGER, J.:   **FILED DECEMBER 2, 2016**

J.K. (Father) appeals from the order entered June 6, 2016, in the

Court of Common Pleas of Westmoreland County, which terminated

involuntarily his parental rights to his minor daughter, J.R.K. (Child), born in

November of 2011.[1]  We affirm.

The orphans' court summarized the relevant factual and procedural

history of this matter as follows.

>  On May 6, 2014[,] a Protection From Abuse (PFA) Order
>  was entered on behalf of [Mother], giving temporary custody of

_____

* Retired Senior Judge assigned to the Superior Court.

[1] Child's mother, R.R.C. (Mother), executed a consent to adoption form on
September 18, 2015.  The orphans' court entered an order confirming
Mother's consent and terminating her parental rights to Child on June 24,
2016.  Mother has not filed a brief in connection with the instant appeal, nor
has she filed her own separate appeal.

[Child] to Mother. According to the Order, Father's custody would be supervised by the Westmoreland County Children's Bureau [(WCCB)] or other agency until further Order of Court. Mother's allegations of abuse included Father's engaging in sexual conduct that was uncomfortable for [] Mother, Father's viewing of child and incest pornography, and threats to kill her. She also expressed concern for her minor daughter's safety. As a result, the PFA Order only permitted Father supervised visitation with [Child].

On June 3, 2014, [WCCB] took emergency custody of the minor child, based upon the Mother's request that [Child] be removed from the home, and because of limitations upon Father's contact with [Child] pursuant to the PFA Order.

On June 24, 2014, the Court entered an Adjudication and Disposition Order placing [Child] in foster care. In that Order, the [c]ourt found that:

- Father informed the caseworker that he had been twice adjudicated delinquent on sex abuse charges[.]

- Father did not have a residence of his own.

- Father represented that he suffered from bipolar disorder with manic episodes.

- Father recognized that he had issues that he needed to deal with before he should be considered for custody of [Child].

Orphans' Court Opinion, 7/18/2016, at 1-2 (unnumbered pages).

On October 16, 2015, WCCB filed a petition to terminate Father's parental rights to Child involuntarily. The orphans' court held a termination hearing on May 5, 2016, during which the court heard the testimony of licensed clinical social worker, Cynthia King; psychologist, Carol Hughes; psychologist, Carol Patterson; licensed professional counselor, Joe Narduzzi;

WCCB caseworker, Elizabeth Messer; and Father.  Following the hearing, on June 6, 2016, the court entered an order terminating Father's parental rights.  Father timely filed a notice of appeal, along with a concise statement of errors complained of on appeal.

Father now raises the following issues for our review.

I. Whether the [orphans'] court erred in finding by clear and convincing evidence that the moving party met its burden as to terminating the parental rights of Father under 23 Pa.C.S. §[]2511(a)(8)?

II. Whether the [orphans'] court erred in finding by clear and convincing evidence that the moving party met its burden under 23 Pa.C.S. §[]2511(b) that the best interest of [Child] is met by terminating Father's parental rights?

Father's Brief at 4 (orphans' court answers omitted).

We consider Father's claims mindful of our well-settled standard of review.

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record.  If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.  A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.  The trial court's decision, however, should not be reversed merely because the record would support a different result.  We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Father's parental rights pursuant to Section 2511(a)(8) and (b), which provides as follows.

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

> ***

> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

> ***

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the

- 4 -

developmental, physical and emotional needs and welfare of the child.  The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent.  With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(8) and (b).

We first address whether the orphans' court abused its discretion by terminating Father's parental rights pursuant to Section 2511(a)(8).

In order to terminate parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(8), the following factors must be demonstrated: (1) The child has been removed from parental care for 12 months or more from the date of removal; (2) the conditions which led to the removal or placement of the child continue to exist; and (3) termination of parental rights would best serve the needs and welfare of the child.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1275-76 (Pa. Super. 2003). "Notably, termination under Section 2511(a)(8)[] does *not* require an evaluation of [a parent's] willingness or ability to remedy the conditions that led to placement of her children." *In re Adoption of R.J.S.*, 901 A.2d 502, 511 (Pa. Super. 2006) (citations omitted) (emphasis in original).

Father argues that he remedied the conditions that previously prevented him from caring for Child.  Father's Brief at 11.  Specifically, Father contends that he has not had "any issues with regard to domestic violence" since WCCB opened its case, and that "there has not been any competent evidence on the record indicating that Father . . . is continuing to have sexual issues[.]"  *Id.* at 10-11.  Father asserts that he previously

completed mental health treatment, and that he is "only a moderate to low risk to re-offend." *Id.*

The court concluded that involuntary termination was proper under section 2511(a)(8) because it has been over twelve months since Child was placed in foster care[2], and, in that time, Father has not remedied the conditions that led to Child's placement. Orphans' Court Opinion, 7/18/2016, at 7 (unnumbered pages). In coming to this conclusion, the court emphasized that Father failed to comply with court-ordered mental health treatment, and that Father continues to lack stable employment and housing. *Id.* at 7, 9. In addition, the court observed that Father himself admitted that Child's needs and welfare would best be served by remaining with her foster family. *Id.* These determinations are supported by the record.

During the termination hearing, WCCB caseworker, Elizabeth Messer, testified that Father was asked to complete a series of reunification objectives following Child's adjudication of dependency. N.T., 5/5/2016, at 153. These objectives included participating in parenting instruction, obtaining and maintaining stable and appropriate housing, securing and maintaining a verifiable and legal source of income, continuing with mental

---

[2] As discussed above, Child was placed in foster care on June 3, 2014. At the time of the termination hearing, on May 5, 2016, Child had been removed from Father's care for nearly two years.

health treatment and individual counseling until successful completion, undergoing a psychosexual evaluation and complying with any recommended treatment, and participating in sexual abuse offender treatment. *Id.*

Concerning Father's compliance with these objectives, Ms. Messer testified that Father participated in parenting instruction. *Id.* Despite this participation, Father made little, if any, progress in terms of parenting skill over the last two years. *Id.* at 153-54. Father also has failed to obtain stable and appropriate housing. *Id.* at 158-59, 171. Ms. Messer reported that Father resided in approximately six different locations over the last two years, "with some additional places that he has stayed for a night or two that we're not necessarily aware of." *Id.* at 154. Concerning Father's employment, Ms. Messer believed that Father has been employed at eight separate locations since Child entered foster care. *Id.* at 159. Father did not provide her with paystubs or other verification for any of these jobs. *Id.* at 161-66.

Further, with respect to Father's mental health, Ms. Messer testified that Father stopped taking his medication and attending mental health treatment.[3] *Id.* at 166. According to Ms. Messer, Father did complete a

_____

[3] Father testified that he began attending counseling and therapy "about two weeks ago." N.T., 5/6/2016, at 194-95.

psychosexual evaluation.[4]  ***Id.*** at 168.  However, Father was discharged unsuccessfully from sex offender treatment.  ***Id.*** at 167-68.

Moreover, the record demonstrates that Father failed to make progress toward completing his reunification objectives.  Of the greatest significance, Father was discharged unsuccessfully from sex offender treatment.  The record reveals that Father has a history of sexually abusing children as a juvenile, and that Father admitted to viewing child pornography as an adult.  ***Id.*** at 29-30, 48.  Psychologist, Carol Hughes, testified that Father remains a "moderate" risk to commit additional sexual offenses.  ***Id.*** at 53.  Given this evidence, it is clear that Father has failed to remedy the conditions that caused Child to be removed from his care.

Finally, our review of the record confirms that terminating Father's parental rights would best serve Child's needs and welfare.  Father remains completely incapable of caring for Child, and it is doubtful that he ever will be capable.  As this Court has stated, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities.  The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims

---

[4] Licensed clinical social worker, Cynthia King, testified that she was not able to complete Father's psychosexual evaluation, because of Father's inability to stay on topic during her appointments with him, and because Father failed to attend appointments.  N.T., 5/5/2016, at 7-12, 17.

of progress and hope for the future." ***In re Adoption of R.J.S.***, 901 A.2d at 513.

We next consider whether the trial court abused its discretion by terminating Father's parental rights pursuant to Section 2511(b). We have discussed our analysis pursuant to Section 2511(b) as follows.

> Section 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, Section 2511(b) does not explicitly require a bonding analysis and the term 'bond' is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
> > [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

***In re Adoption of C.D.R.***, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting ***In re N.A.M.***, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).[5]

---

[5] We observe that Sections 2511(a)(8) and (b) both require a court considering a termination petition to assess the needs and welfare of the

*(Footnote Continued Next Page)*

Here, the orphans' court found that Child is bonded with her pre-adoptive foster mother, and is flourishing in the care of her foster family. Orphans' Court Opinion, 7/18/2016, at 10 (unnumbered pages). Father argues that he performed well during his visits with Child, and that the bonding evaluation presented to the court was "unbalanced" because it "did not adequately examine the strength of the parent-child bond." Father's brief at 12-13.

Concerning the relationship between Father and Child, psychologist Carol Patterson testified that she conducted bonding evaluations with respect to Child, Father, and Child's foster mother. *Id.* at 83-85. Ms. Patterson evaluated Child with her foster mother on September 15, 2015, and evaluated Child with Father on December 7, 2015. *Id.* at 85. Based on these evaluations, Ms. Patterson opined that Child displays a strong bond with her foster mother. *Id.* at 87. In contrast, Child displays no bond with Father. *Id.* at 95. Ms. Patterson explained her conclusions as follows.

> I concluded that [Child] displayed a strong bond with her foster mother during this assessment. She had good attention [and] concentration levels, which was really different in the two. When the foster mother was able to structure the situation,

*(Footnote Continued)* _____

relevant child or children. However, the needs and welfare analysis required by Section 2511(a)(8) is distinct from the needs and welfare analysis required by Section 2511(b), and must be addressed separately. *See In re C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*) ("[W]hile both Section 2511(a)(8) and Section 2511(b) direct us to evaluate the 'needs and welfare of the child,' . . . they are distinct in that we must address Section 2511(a) before reaching Section 2511(b).").

[Child] was able to . . . concentrate up to 15-20 minutes on a -- like, a social play situation[.] [W]ith her father . . . her attention, [and] concentration were very short and she just went from one thing to the next.

She sought proximity to her foster mother. When they were playing, [Child] would go to her, sit next to her, go on her lap, be around her in the various play situation[s]. And she responded positively to all of her foster mother's approaches towards her, which was pretty much the opposite of what happened with her father. She had a very short attention span. She initiated only one affectionate behavior towards him. She had negative responses to many of his approaches towards her and included him in only one activity in which she was engaged.

*Id.* Ultimately, Ms. Patterson did not believe that any harm would come to Child if Father's parental rights are terminated. *Id.* at 95-96. Ms. Patterson expressed concern, however, that separating Child from her foster mother "could be potentially devastating." *Id.* at 96.

Thus, we again conclude that the record supports the finding of the orphans' court that terminating Father's parental rights will best serve Child's needs and welfare. The evaluations conducted by Ms. Patterson confirm that Child is bonded strongly with her foster mother, and that Child does not share a bond with Father. While Father suggests that Ms. Patterson failed to examine adequately the strength of the relationship between Father and Child, our review of the record belies this assertion.

Accordingly, because we conclude that the orphans' court did not abuse its discretion by terminating involuntarily Father's parental rights to Child, we affirm the order of the orphans' court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/2/2016